UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KELLY ZEIGLER** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 05-4138** |
| **BP AMERICA PRODUCTION CO.** | * | **SECTION: "L" (5)** |

## ORDER AND REASONS

Pending before the Court is the Defendant's Motion for Summary Judgment (Rec. Doc. 22). The Court heard oral argument and took this motion under submission. For the following reasons, the Defendant's motion is GRANTED.

I.  BACKGROUND

Pride Offshore, Inc. ("Pride") developed and operated the Mad Dog spar platform for the Defendant BP America Production Co. ("BP"). The Mad Dog facility is owned by BP and located on the Outer Continental Shelf ("OCS") at Green Canyon Block 782 of the Gulf of Mexico. BP entered into the Drilling Rig Construction and Purchase Contract ("Construction Contract") with Pride on March 15, 2002. Under the Construction Contract, Pride designed and developed the drilling rig for the Mad Dog facility. On September 24, 2004, BP provisionally accepted the rig from Pride, thereby ending the term of the Construction Contract and initiating the term of the Drilling Rig Operation and Maintenance Services Contract ("Operation Contract"). From this date, Pride provided operational services on the Mad Dog platform. The

facility began production in January, 2005.

The Plaintiff, Kelly Zeigler, was employed by Pride as a motorman and was responsible for checking machinery on the platform to make sure it was functioning properly. The Plaintiff alleges that he was injured while working on the pipe rack of the Mad Dog platform on August 20, 2004, at approximately 4:00 a.m. The Plaintiff was in the middle of a fourteen-day hitch, and at the time of his alleged accident he was working a 12-hour tour from 6:00 p.m. until 6:00 a.m. On the morning in question, the Plaintiff and others were moving equipment that had just arrived on the platform. The Plaintiff's immediate supervisor, Ray Buckley, instructed the Plaintiff to accompany him to the pipe rack to move a drill press out of a box container so that a crane could move it into the proper location for the morning tour. The Plaintiff and Buckley entered the container and lifted the drill press. The Plaintiff was walking backwards while carrying the drill press and was the first man out of the container. As he stepped out of the container, the Plaintiff's left leg went into a hole in the deck and he fell down, with the drill press coming down on top of him. After reporting the injury to his supervisors, the Plaintiff received some treatment and was then evacuated from the platform.

On July 25, 2005, the Plaintiff filed suit in the Civil District Court for the Parish of Orleans, Louisiana, against the platform owner BP. BP subsequently removed the case to this Court. On August 26, 2006, BP filed the instant motion for summary judgment seeking dismissal of the Plaintiff's claims.

**II.    LAW AND ANALYSIS**

Summary judgment is appropriate where the "pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In deciding a motion for summary judgment, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor."  *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).  Once the moving party identifies the parts of the record that support its claim that no genuine issue of material fact exists, the nonmoving party must "go beyond the pleadings" to identify specific facts that are at issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The Mad Dog facility is a fixed platform located on the OCS in the Gulf of Mexico, thus the Plaintiff's claims are governed by the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, *et seq*.  Under this Act, the rights of an injured worker are governed by "federal law, supplemented by the law of the adjacent state." *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355 (1969).  Louisiana is the adjacent state in this case, and therefore traditional principles of Louisiana negligence law apply.

At the time of the accident on the pipe rack, the parties were operating under the Construction Contract.  Pursuant to the Construction Contract, Pride maintained ownership and control of the rig while it was being developed and installed on the platform.  The rig package included the pipe rack where the Plaintiff claims he was injured.  Accordingly, the Plaintiff cannot argue that BP presumably controlled the pipe rack when the dangerous condition was created because BP did not assume ownership of the rig until September 24, 2004, a month after the Plaintiff's accident.

The Plaintiff argues that genuine issues of fact do exist, however, regarding BP's liability

for the negligence of its independent contractor Pride.  In general, under Louisiana law, a principal platform owner such as BP is "not liable for the offenses an independent contractor commits in the course of performing its contractual duties." *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 549-50 (5th Cir. 1987).  There are two exceptions to this general rule.  First, a principal cannot avoid liability for injuries resulting from an ultra-hazardous activity.  *Id.*  Offshore drilling is not ultra-hazardous, and therefore this exception does not apply.  *Id.*  Second, a principal cannot avoid liability if it retains or exercises operational control.  *Id.*; *Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997).

To determine whether or not BP retained operational control, the Court must first "examine the extent to which [BP] contractually reserved the right to control the work." *Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003).  At the time of the accident, the parties' relationship was governed by the Construction Contract.  The Construction contract contains the following language relevant to whether or not BP retained operational control:

> Article 4.01  Independent Contractor
>
> In the performance of the Work, [Pride] is an independent contractor, shall control the performance of the details of the Work, and shall be responsible for the results and for ensuring that the Work is performed in a manner consistent with appropriate health, safety, and environmental considerations . . . .  The presence of and the observation and inspection by [BP's] representative(s) at the Work Site shall not relieve [Pride] from [Pride's] obligations and responsibilities under this Contract.

The plain language of the Construction Contract demonstrates that BP did not retain operational control.  *See Fruge*, 337 F.3d at 564.

It is not enough for the principal to have a company man on the platform, rather, the principal must exercise "direct supervision over the step-by-step process of accomplishing the

work such that the contractor is not entirely free to do the work in his own way." *Fruge v. Parker Drilling Co.*, 337 F.3d 558 (5th Cir. 2003).  Indeed, "absent an express or implied order to the contractor to engage in an unsafe work practice leading to an injury, a principal like [BP] cannot be liable under the operational control exception." *Coulter*, 117 F.3d at 912.

The pleadings, depositions, and affidavits in this case describe the situation on the platform and also support the conclusion that BP did not retain operational control.  BP argues that a Pride employee, probably the crane operator, removed the post from the pipe rack to allow the container boxes to be opened and unloaded.  One of BP's on-shore supervisors, Dan Kline, reviewed personnel rosters and testified during his deposition that the only crane operators aboard the platform at the time were Pride employees.  The Plaintiff went along with this theory during his deposition, stating that although he did not see who took the post out, the crane operator was the only individual with equipment large enough to complete such a task.  The Plaintiff asks the Court to assume that one of the BP employees present on the platform ordered the removal of the post from the pipe rack.  However, under *Ainsworth*, *Coulter*, and *Fruge*, the Plaintiff must identify specific facts demonstrating operational control; the Court cannot "assume that the [Plaintiff] could or would prove the necessary facts at trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

The Plaintiff also alleges that the lighting on the platform was inadequate.  BP denies having knowledge of inadequate lighting, but even if it had such knowledge, a platform owner does not owe an independent contractor's employee a duty to provide a safe working environment.  *See Graham v. Amoco Oil Co.*, 21 F.3d 643, 647 (5th Cir. 1994).

## III. CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment is GRANTED and the Plaintiff's claims are hereby DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __3rd__ day of __October__, 2006.

                                                                    _____
                                                                                UNITED STATES DISTRICT JUDGE